**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

MARTIN S. FRIEDLANDER,
individually seeking damages to him personally,
and as assignee of the Successor Trustee of the Legal
Defense and Maintenance Trust of California,
a citizen of California; and as an
Express Third Party Beneficiary
of the Legal Defense and Maintenance Trust of
California,

Plaintiff,

v. No. CIV 07-1016 JB/RHS

DAVIS & PIERCE; CHRIS W. PIERCE; WILLIAM F. DAVIS;
SAMUEL H. BREGMAN, JR.,

Defendants.

**MEMORANDUM OPINION**[1]

**THIS MATTER** comes before the Court on Defendant Samuel H. Bregman's Motion to Dismiss, filed November 29, 2007 (Doc. 10). The Court has carefully reviewed the briefing in this case, issued an order granting the motion, is familiar from other cases with the lawsuits that Plaintiff Martin S. Friedlander has brought in this district, and does not believe a hearing is necessary. The primary issue in this diversity case is whether Friedlander has stated a state-law cause of action for malicious abuse of process or conversion against Defendant Samuel H. Bregman, Jr. Because the First Amended Complaint fails to state a cause of action for malicious abuse of process or conversion, the Court will dismiss the Complaint against Bregman without prejudice to Friedlander filing an amended complaint within ten days of the entry of this opinion explaining the current

[1] On September 30, 2008, the Court issued an order granting this motion, stating in part: "The Court will, however, at a later date issue an opinion more fully detailing its rationale for this decision." Doc. 16 at 1. This memorandum opinion is the promised opinion.

Complaint's deficiencies in pleading claims against Bregman.

**ALLEGATIONS IN THE COMPLAINT**

Friedlander's Amended Complaint, which he styled as "First Amended Complaint for Malicious Abusive [sic] of Process as Defined by Judge Browning in Friedlander v. Cook 06-CV-1160 by Memorandum Opinion and Order of October 4, 2007 (Demand for Jury Trial)" contains various allegations. He alleges that, "[o]n May 19, 2005, Chris Pierce ("Pierce") of Davis & Pierce, in collaboration with attorney Sam Bregman filed a Chapter 11 petition for the Debtor Jeffery W. Potter. . . . Pierce [and Bregman] [had] actual knowledge that Potter had transferred all of his real and personal property to the California Trust in October 2003. " Amended Complaint ¶ 6, at 4, filed October 29, 2007 (Doc. 2). Friedlander is the California attorney who created the Trust for Potter. Pierce, Potter's bankruptcy attorney, "filed with the court the schedules, statement of affairs, and claims of exemption, that [Potter] . . . signed under penalty of perjury . . . ." Id. ¶ 8(c) at 5. Bregman was employed, with approval of the Bankruptcy Court, to represent Potter in collateral litigation to recover assets for the bankruptcy estate. See id. ¶ 20 at 11. According to Friedlander, "Bregman . . . reviewed the petition, the schedules, the statement of affairs, and claims of exemption." Id. ¶ 8(d) at 5.

"Prior to the date of the filing, Bregman was retained, and paid a monetary retainer, by [Potter] to handle various pieces of litigation for [Potter], including [litigation] in the [state] District Court of New Mexico in Santa Fe . . . ." Id. ¶ 8(e) at 6. Friedlander contends that, "Bregman violated the New Mexico version of the FRCP with respect to Discovery, by not complying with the same, and [the state district court judge] entered a sanction order against Potter, dismissing various claims asserted by Potter . . . ." Id. Friedlander alleges that

Bregman malpracticed and breached his fiduciary duty to Potter in several separate

> respects . . . .Bregman breached that fiduciary duty to Debtor by referring debtor to Davis & Pierce, a friend of Bregman, where Bregman, Davis and Pierce cooked up an alleged criminal scheme to defraud this court and its creditors by filing an "abusive" bankruptcy under Chapter 11, even though Bregman, Pierce and Davis had "actual" knowledge that Potter had transferred all of his assets to the California Trust . . . .

Id. ¶ 8(f) at 6. "Friedlander[] is a creditor and a defendant in two adversary proceedings in [Potter's] bankruptcy action that was abusively filed . . . ." Id. ¶ 9 at 7. The bankruptcy court has sanctioned Friedlander for contempt. See id. Friedlander contends that "Pierce and Bregman schemed among themselves to deprive Potter from seeking true independent advice from Friedlander as to what may befall Potter if he filed this bankruptcy. In order to deprive Potter of receiving independent advise [sic] from Friedlander, both Pierce and Bregman falsely told Potter that Friedlander, not Bregman (who malpracticed), was the cause of all of Potter's problems." Id. ¶ 10 at 7. According to Friedlander, "[a]t the time of the transfer to the Trust, Potter had a negative net worth and therefore the Trust received no valuable consideration, and both Bregman and Pierce knew this fact. Yet Pierce caused Potter to file a 'spurious' fraudulent conveyance action against Danilovic [the original Trustee of Potter's Trust] without 'probable cause' to frighten her into transferring the assets back to the Trust, in order to legitimize Pierce's otherwise illegitimate conduct." Id. ¶ 10 at 8.

Pierce and Bregman both withdrew from representing Potter. See id. ¶ 11 at 8. Friedlander alleges that "[n]either Bregman, Davis nor Pierce conducted any investigation whatsoever into the validity of the creation of the Trust or the transfer of the assets to the Trust, and the consideration supporting the transfer. They never contacted Friedlander or Danilovic, who was the Trustee in 2005 to investigate the transaction." Id. ¶ 13 at 10. According to Friedlander, "[b]oth Davis and Pierce knew that Potter had no estate to be administered by the Bankruptcy Court. There was only one thread, namely to file a false and untrue fraudulent conveyance action to set aside the transfer

of the assets to the Trust, and to 'falsely' argue to the Bankruptcy Court that the Estate had assets if they prevailed on the fraudulent conveyance action." Id. ¶ 14 at 10. "Friedlander is suing as an individual for damages to him personally as well as in his capacity as Assignee of the California Trust, of which Friedlander is the Successor Trustee and express 3rd party beneficiary thereof." Id. at 2.

In Count 1 of the Amended Complaint, Friedlander, as the "assignee of the Trust" alleges that Bregman and Pierce committed "procedural abuse of process" by "conspiring together to file this bankruptcy on behalf of Potter" and causing "damages to the California Trust." Id. ¶ 17 at 10. Friedlander states that he "is not filing this claim on behalf of Potter, the 'real victim' since the [bankruptcy] Case Trustee has refused to prosecute the same or abandon the same, and is seeking to set aside the California Trust which claims ownership of this asset." Id. Friedlander

> seeks leave of court for Potter to file as a plaintiff in his own name once the first of three events take place, (1) the abandonment of the asset (2) the dismissal of the Chapter 7 pursuant to a pending motion; or (3) the dismissal of the "spurious" fraudulent conveyance action by the bankruptcy court; or a (4) a writ of mandate from this District Court commanding the bankruptcy court to dismiss the bankruptcy as being false and abusive. Friedlander has been threatened with contempt if he dares file on behalf of Potter at this time as the Bankruptcy Trustee may claim this as an estate asset protected by 362 (a) of the Bankruptcy Code.

Id. ¶ 17 at 11.

Friedlander asserts that

> Bregman was paid a $23,000 retainer by Potter using Trust Assets to do so. Bregman then obtained . . . a $100,000 retainer from [another client], and Bregman filed a motion to withdraw . . . . The [bankruptcy] court granted the [] motion [to withdraw] and awarded Bregman some of the fees he received from Potter which monies Potter received from the forced liquidation of "converted" Trust Assets.

Id. ¶ 22 at 12. Friedlander contends that "Bregman knowingly still retains converted Trust assets, and in so doing, committed the tort of conversion." Id.

After Pierce withdrew as counsel, Potter dismissed "the spuriously filed fraudulent conveyance action against the Trust." Id. ¶ 24 at 13. Friedlander contends that the "fraudulent conveyance action was maliciously prosecuted against the Trust without any probable cause to do so. Said action was prosecuted by defendants for the sole purpose of maintaining a bad faith chapter 11 proceeding, and to improperly assert the "automatic stay" provisions of the Bankruptcy Code." Id. ¶ 25 at 13.

In Count 11 of the Amended Complaint, Friedlander contends that, because of the "conspiratorial filing of this abusive fraudulent and sham bankruptcy, and the violation of Rule 9011, Friedlander was forced to file a proof of claim for $236,000 in this 'sham' bankruptcy, the collection of which depends on the honesty and competence of the case trustee." Id. ¶ 29 at 14. Friedlander "attribute[s] [the] loss of $236,000 to the filing of the false bankruptcy by Pierce and the appointment of the Case Trustee to prosecute that claim." Id. He further contends that, because of the bankruptcy, he "was hauled into court to defend an adversary proceeding filed by LANB, which is presently on appeal." Id. ¶ 30 at 14. He alleges he has "lost in excess of $80,000, plus the expenditure of hundreds of hours of [his] time at [his] hourly rate of $300 to defend that adversary and to appeal from a judgment against [him] in that adversary due to erroneous rulings by the bankruptcy judge." Id. ¶ 30 at 14. He contends that he has now "been named personally as a defendant in a new fraudulent conveyance action by the Case Trustee who has covered up the crimes of Pierce. Defending [himself] in that proceeding will cost [him] over $100,000 in fees and expenses." Id. ¶ 31 at 14. Friedlander contends that "[e]verything that has happened to [him] in bankruptcy court was proximately caused by the sham bankruptcy filed by Pierce to cover up the malpractice by Bregman. [He is] not suing any defendant for malpractice as that claim belongs to either Potter or the Case Trustee." Id. ¶ 36 at 15.

**LAW REGARDING MOTIONS TO DISMISS**

The Supreme Court of the United States and the United States Court of Appeals for the Tenth Circuit have set forth new standards that courts should apply in resolving a motion to dismiss brought under rule 12(b)(6) of the Federal Rules of Civil Procedure.

> *Bell Atlantic Corp. v. Twombly* [] reject[ed] the "no set of facts" language of *Conley* [v. Gibson, 355 U.S. 41, 45-46 (1957),] and announc[ed] a new (or clarified) standard: to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." --- U.S. ----, ----, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929 (2007). Under this revised standard, as we explained in *Ridge at Red Hawk, L.L.C. v. Schneider*:
>
> > the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.
>
> 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 127 S. Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008). The Tenth Circuit emphasized that

> 'plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Id. (internal quotation marks, citation, and footnote omitted).

> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." [Bell Atlantic v. Twombly, 127 S. Ct.] at 1965 n. 3. *See Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C.*, 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). The *Twombly* Court was

> particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin." *Id.*

Robbins v. Oklahoma, 519 F.3d at 1248-49.

**LAW REGARDING MALICIOUS ABUSE OF PROCESS**

To state a claim for the tort of malicious abuse of process in New Mexico, the plaintiff must allege:

> (1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages. An improper use of process may be shown by (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment, or other conduct formerly actionable under the tort of abuse of process. A use of process is deemed to be irregular or improper if it (1) involves a procedural irregularity or a misuse of procedural devices such as discovery, subpoenas, and attachments, or (2) indicates the wrongful use of proceedings, such as an extortion attempt.

Durham v. Guest, No. 30,656, 204 P.3d 19, 2009 WL 701734 at *8 (N.M. Feb 20, 2009)(internal quotation marks and citation omitted). The Supreme Court of New Mexico has emphasized that "the tort of malicious abuse of process should be construed narrowly in order to protect the right of access to the courts." Id.

**LAW REGARDING CONVERSION**

"[T]o constitute conversion of property, . . . there must be proof of the wrongful possession, or of the exercise of a dominion over it in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." Mine Supply, Inc. v. Elayer Co., 75 N.M. 772, 774, 411 P.2d 354, 355 (1966) (internal quotation marks omitted). "Under New Mexico law, tortious conversion of property has been defined to include, *inter alia*, the wrongful possession of, or the exercise of dominion over, a chattel to the exclusion or in defiance

of the owner's rights." Allstate Ins. Co. v. Jensen, 109 N.M. 584, 589 n.4, 788 P.2d 340, 345 n.4 (1990). In In re Potter, 7-05-14071 MS, 05-1149 M, 2007 WL 2332137 (Bankr. D.N.M. August 13, 2007), the Honorable Mark McFeeley, United States Bankruptcy Judge, sanctioned Friedlander for violating the automatic stay in Potter's bankruptcy action by bringing suits on behalf of the California Trust. See 2007 WL 2332137 at *4. Judge McFeeley cited Mine Supply, Inc. v. Elayer Co. for the proposition that "the first element to be proved in a claim for conversion is 'wrongful possession, or of the exercise of a dominion over it in exclusion or defiance of the owner's right, or of an unauthorized and injurious use or of a wrongful detention after demand.'" Id. Judge McFeeley further noted that the District Court for the District of New Mexico had dismissed another of Friedlander's suits for conversion involving Potter for failure to state a claim and because Friedlander's other claims were already pending in bankruptcy court. See id.

## ANALYSIS

After carefully reviewing Friedlander's Complaint, the Court concludes that it fails to state a cause of action either for malicious abuse of process or for conversion. While the Court has concerns whether Friedlander will be able to state causes of action -- or at least these two causes of action -- against Bregman, because it is unclear what theory of malicious abuse of process Friedlander is attempting to invoke, and because New Mexico law on that tort has recently changed, the Court will allow him to amend his complaint. If Friedlander intends to take advantage of this opportunity to amend all or part of his Complaint, he must be careful to support with facts each of the essential elements of his cause or causes of action against Bregman.

### I. FRIEDLANDER'S COMPLAINT DOES NOT STATE A CAUSE OF ACTION AGAINST BREGMAN.

Bregman contends, and the Court agrees, that Friedlander has failed to state a cause of action

either for malicious abuse of process or for conversion. Friedlander has not stated any facts to show that Bregman used process against Friedlander "in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge," or that Bregman's "primary motive" in representing Potter was "to accomplish an illegitimate end" related to Friedlander. See Durham v. Guest, 2009 WL 701734 at *8. In his response,[2] Friedlander argues that Bregman conspired with Pierce, but the Complaint alleges only that Bregman and Pierce conspired "to file this bankruptcy on behalf of Potter" to allegedly cover up Bregman's malpractice in handling Potter's previous lawsuits, and Friedlander states in his Complaint that any malpractice claims belong to either Potter or the Bankruptcy Trustee. See Complaint ¶ 36, at 15. The Complaint does not allege that Bregman had an improper motive regarding Potter. Therefore, Friedlander has not alleged any improper motive directed at him. In short, there are no allegations that Bregman ever used any process in the bankruptcy proceedings or in any other legal proceedings against Friedlander or Potter, so Friedlander has failed to state a claim that Bregman committed a tort for which he is liable to Friedlander or Potter by maliciously abusing legal process against Friedlander or Potter. Further, as Friedlander concedes, to allege a conspiracy, a plaintiff must show

> "(1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts." *Silva v. Town of Springer*, 1996-NMCA-022, ¶ 25, 121 N.M. 428, 912 P.2d 304. Unlike a conspiracy in the criminal context, a civil conspiracy by itself is not actionable, nor does it provide an independent basis for liability "'unless a civil action in damages would lie against one of the conspirators.'" *Armijo v. National Sur. Corp.*, 58 N.M. 166, 178, 268 P.2d 339, 347 (1954) (quoting *Pullen v. Headberg*, 53 Colo. 502, 127 P. 954, 955 (1912)). A civil conspiracy must actually involve an independent, unlawful act that causes harm-something that would give rise to a civil action on its own.

[2] Friedlander urges the Court to apply a standard of review for motions to dismiss that the Supreme Court of the United States has modified, and most of his citations are to legal authority from circuits other than the Tenth Circuit.

Ettenson v. Burke, 130 N.M. 67, 72, 17 P.3d 440, 443 (Ct. App. 2000). Although Friedlander offers his opinion that filing the bankruptcy pleadings and the adversarial proceedings was unlawful, that is a legal conclusion that the Court does not need to accept as true for purposes of the motion to dismiss. Friedlander has alleged no facts to show that the bankruptcy court, which has exclusive jurisdiction over Potter's core bankruptcy proceedings, has deemed the filing of the bankruptcy action or of any of the core adversarial proceedings involving Friedlander to have been unlawful, and it is undisputed that the bankruptcy proceedings are ongoing.

Similarly, Friedlander has stated no facts suggesting that Bregman unlawfully exercised any control over property belonging to the Trust or to Friedlander, which is an essential element of the tort of conversion. See Mine Supply, Inc. v. Elayer Co., 75 N.M. at 774, 411 P.2d at 355. Friedlander has not responded to Bregman's contention that the claim for conversion must be dismissed. Because Friedlander has failed to state a claim for malicious abuse of process or for conversion against Bregman, the Court will dismiss his Complaint as to Bregman.[3]

## II. THE COURT WILL ALLOW FRIEDLANDER TO AMEND THE COMPLAINT AGAINST BREGMAN.

The Court is reluctant to give Friedlander another bite at the apple when some cases have indicated that, when a plaintiff has had an opportunity to respond to a motion to dismiss and does not request an opportunity to amend, dismissals for failure to state a claim are to be with prejudice unless the reason for dismissal is for lack of jurisdiction, or because the claims are not ripe because

[3] Bregman also raises the lack of Friedlander's standing to bring these claims. While the Court has concerns, based on other litigation Friedlander has filed in this Court, about his ability to sue as an assignee of the California Trust, the Court cannot resolve that issue on a motion to dismiss. If the California Trust properly transferred Potter's claims to Friedlander, and the California Trust had claims to transfer, Friedlander could have standing. The Court cannot, however, make these factual determinations -- whether a valid transfer took place and whether the California Trust had assets -- on this motion.

of failure to exhaust remedies, or because a condition precedent has not occurred. See, e.g., Brereton v. Bountiful City Corp. 434 F.3d 1213, 1218-19 (10th Cir. 2006)(stating that "dismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is incapable of reaching a disposition on the merits of the underlying claims," and holding that dismissal for lack of standing should be without prejudice); Hollander v. Sandoz Pharm. Corp., 289 F.3d 1193, 1216-17 (10th Cir. 2002)(holding that dismissal for lack of personal jurisdiction should be without prejudice when it does not address merits of the underlying claim); Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1212-13 (10th Cir. 2003)(stating that, "[a] dismissal based on lack of exhaustion . . . should ordinarily be without prejudice," because "[f]ailure to exhaust administrative remedies is often a temporary, curable, procedural flaw"), *abrogated on other grounds by* Jones v. Bock, 549 U.S. 199 ( 2007); Fottler v. United States, 73 F.3d 1064, 1065-66 (10th Cir.1996)(noting that, "[w]hen a § 1983 claim is dismissed under *Heck* [*v. Humphrey*, 512 U.S. 477 (1994)], the dismissal should be without prejudice . . . [so that if the plaintiff] is later successful in overturning his conviction, he [may] bring his § 1983 action at that time"). The Court is generally reluctant to give a plaintiff an opportunity to amend before dismissing with prejudice except in those pro se cases where the Court has sua sponte determined that the complaint fails to state a claim but has not concluded that amendment would be futile. See Curley v. Perry, 246 F.3d 1278 (10th Cir. 2001). And the basis for allowing the pro se plaintiff in that situation an opportunity to amend is the due-process necessity of notice, which a motion to dismiss affords. See id. As the United States Court of Appeals for the Tenth Circuit explained,

> Plaintiff argues that if his complaint were deficient, he should have been permitted to amend the complaint to cure the deficiencies. The filing of a motion to dismiss gives the plaintiff notice that his complaint is potentially deficient and the opportunity to amend his complaint to cure the alleged deficiencies. *Hall* [v. *Bellmon*], 935 F.2d [1106,] 1109-10 [10th Cir. 1991]. Plaintiff did amend his

> complaint once. The district court's docket sheet does not show that plaintiff moved to file a second amended complaint. Absent such a motion, no error occurred. *See* Fed.R.Civ.P. 15(a); *cf. Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1554-55 (10th Cir. 1992) (plaintiff sought leave to amend complaint to cure pleading defect). Further, dismissal of plaintiff's complaint with prejudice was appropriate. A dismissal for failure to state a claim is a resolution on the merits and, therefore, is with prejudice. *See Lone Star Indus.* [*Inc.*, *v. Horman Family Trust*], 960 F.2d [917,] 920 [10th Cir. 1992].

Ostler v. Buhler, No. 93-4010, 30 F.3d 142, 1994 WL 408124, *2 (10th Cir. Aug. 3, 1994). Further, Bregman requested dismissal with prejudice.

The Court has reservations whether it is fair to Bregman to allow Friedlander an opportunity to amend his Complaint. Friedlander had Bregman's motion, yet would not concede the problems with his Complaint, instead steadfastly defending his pleadings. On the other hand, the Court did not, in its usual practice, hold a hearing on the motion, thus it did not give Friedlander the opportunity to orally request amendment. Moreover, New Mexico law on malicious abuse of process has undergone some recent changes that the parties have not briefed. Furthermore, Friedlander's other litigation has resolved a number of issues that may impact this litigation. Additionally, the briefing has sorted out some of the confusion about what theory of malicious abuse of process Friedlander is attempting to invoke. Finally, the Court in its September 9, 2008 Order promised Friedlander an opportunity to amend after it issued this opinion, and the Court believes it would be unfair, after the passage of time, to now foreclose that opportunity.

The Court has concerns whether Friedlander will be able to state causes of action -- or at least these two causes of action -- against Bregman. Friedlander now has, however, the benefit of the Court's thoughts on what is required to plead these claims. If Friedlander decides to take advantage of his opportunity to amend all or part of his Complaint against Bregman, he must be careful to assess whether he has a claim and the facts to support each element, and plead the facts

to support each of the essential elements of his causes of action against Bregman.

**IT IS ORDERED** that Bregman's Motion to Dismiss (Doc. 10) is granted and Plaintiff Martin S. Friedlander's Complaint against Bregman is dismissed without prejudice. Friedlander may, within the confines of rule 11 of the Federal Rules of Civil Procedure, file an amended complaint within ten days of the Court's entry of this opinion explaining the Complaint's deficiencies in pleading claims against Bregman.

UNITED STATES DISTRICT JUDGE

*Parties and Counsel:*

Martin S. Friedlander
Los Angeles, California

*Plaintiff Pro Se*

Eric Loman
The Bregman Law Firm, P.C.
Albuquerque, New Mexico

*Attorneys for Defendant Samuel H. Bregman, Jr.*

Lorraine Hollingsworth
Pete Domenici, Jr.
Domenici Law Firm
Albuquerque, New Mexico

*Attorneys for Defendants William F. Davis, Chris W. Pierce, and Davis & Pierce*